O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LENA DRAWN,<br><br>            Plaintiff,<br><br>        v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>            Respondent. | Case No. CV 15-3787-KES<br><br>MEMORANDUM OPINION<br>AND ORDER |

Plaintiff Lena Drawn appeals the final decision of the Administrative Law Judge ("ALJ") denying her application for Supplemental Security Income ("SSI"). For the reasons discussed below, the Court concludes: (1) the ALJ properly evaluated Plaintiff's treating and examining physicians' opinions; (2) substantial evidence supports the ALJ's conclusion that Plaintiff's impairments did not meet the requirements of Listing 12.05(B); (3) the ALJ properly evaluated Plaintiff's mental impairments under Paragraph B; (4) the ALJ gave clear and convincing reasons for discounting Plaintiff's credibility; and (5) the ALJ did not err in finding Plaintiff not disabled at step five of the sequential evaluation. The ALJ's decision is therefore AFFIRMED.

# I.

# BACKGROUND

On February 12, 2013, Plaintiff filed an application for SSI, alleging disability beginning on December 26, 2010, her eighteenth birthday. Administrative Record ("AR") 124-28.  Plaintiff had filed previous applications that were denied.  AR 27-28.  In her current application, Plaintiff alleges that she is unable to work due to depression, anxiety, auditory hallucinations, trauma, social anxiety, insomnia, and suicidal and paranoid thoughts.  AR 136.

On February 4, 2014, an ALJ conducted a hearing, at which Plaintiff, who was represented by counsel, appeared and testified.  AR 24-40.  A vocational expert ("VE") was present.  The ALJ did not ask the VE to testify, however Plaintiff's counsel questioned the VE.  AR 37-39.

On February 12, 2014, the ALJ issued a written decision denying Plaintiff's request for benefits.  AR 11-19.  The ALJ found that Plaintiff had the severe impairments of mood disorder, not otherwise specified, and history of polysubstance abuse reported in remission.  AR 13.  Notwithstanding her impairments, the ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with the additional non-exertional limitation of "no greater than simple repetitive tasks."  AR 16.  The ALJ determined that this limitation had little or no effect on the occupational base of unskilled work at all exertional levels.  AR 18.  The ALJ thus found that Plaintiff was not disabled.  AR 19.

# II.

# ISSUES PRESENTED

The parties dispute whether the ALJ erred in:

(1) rejecting Plaintiff's treating and examining doctors' opinions;

(2) failing to find that Plaintiff's impairments met or equaled a Listing;

(3) evaluating Plaintiff's mental impairments and limitations;

(4) discounting Plaintiff's testimony concerning the intensity, persistence and limiting effects of her symptoms; and

(5) failing to elicit testimony from a VE in the step five analysis.

## III.

## DISCUSSION

**A.    The ALJ Gave Specific and Legitimate Reasons For Rejecting the Opinions of Drs. Parsa, DiGiaro, and Martin.**

Plaintiff contends that the ALJ improperly evaluated the opinions of three doctors: (1) Dr. Vida Parsa, Plaintiff's treating psychiatrist; (2) Dr. Sonia DiGiaro, a state agency psychological consultative examiner, and (3) Dr. Deborah Martin, a second state agency psychological consultative examiner. Dkt. 21 at 9-18.[1]  Plaintiff alleges that each doctor provided opinions that supported greater mental limitations that those found by the ALJ.  Id.

### 1.    Relevant Background

Dr. Parsa has been Plaintiff's treating psychiatrist since June 18, 2012 and saw Plaintiff every 1-3 months.  AR 589.  She diagnosed Plaintiff with mood disorder, rule-out bipolar disorder, panic disorder with agoraphobia, and PTSD.  AR 508, 516, 518.  Dr. Parsa documented Plaintiff symptoms, including hearing voices, paranoia and being scared, crying, racing thoughts, nightmares and sleep difficulties, problems with paying attention, depression, and anxiety.  AR 506, 508, 510, 512, 514, 518, 572, 581-83.  Throughout the

---

[1]    Plaintiff also contends that the ALJ mischaracterized or omitted certain pieces of evidence in assessing Dr. Parsa's opinion.  See Dkt. 21 at 11-18.  However, the ALJ was not obligated to address every piece of evidence. See Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003), superseded by regulation on other grounds as stated in Rosas v. Comm'r of Soc. Sec., 2014 U.S. Dist. LEXIS 167332, at *12-13 (D. Or. Dec. 3, 2014).

course of treatment, Dr. Parsa prescribed psychotropic and antidepressant medications, and sleep aids for Plaintiff including Abilify, Paxil, Klonopin, Ambien, Zyprexa, Haldol, Geodon, and Vistaril.  AR 508, 516, 518, 520, 533-35, 586-88.  On January 30, 2014, Dr. Parsa completed a Mental Impairment Medical Source Statement and opined on Plaintiff's condition using both checked boxes and handwritten notes.  AR 589-95.

Dr. DiGiaro performed a psychiatric examination on Plaintiff on May 26, 2012 and concluded that Plaintiff's ability to maintain regular attendance in the workplace was "mildly impaired," complete a normal workday without interruption was "moderately impaired," and deal with stress in a competitive workplace environment was "severely impaired."  AR 309-13.  Plaintiff was unimpaired in performing detailed and complex tasks, accepting instruction from teachers, and performing work activities consistently without special or additional instruction.  AR 313.  Dr. DiGiaro also noted that Plaintiff had been prescribed Abilify, Wellbutrin, Topamax, Trileptal, Ambien, Klonopin, and Prozac, but was not currently taking any medications because she was recently pregnant, with a six-week-old son.  AR 310.

Dr. Martin performed a psychological evaluation on Plaintiff on May 23, 2013.  AR 559-64.  Like Dr. DiGiaro, Dr. Martin concluded that Plaintiff's ability to follow complex or detailed instructions was unimpaired, but that her ability to adapt to changes in the job routine, maintain adequate attention and concentration, and withstand the stress of a workday were "markedly impaired."  AR 563-64.  Dr. Martin administered a Wechsler Adult Intelligence Scale – IV test ("WAIS-IV") and determined that Plaintiff's full-scale IQ score was 57.  AR 562-63.  Dr. Martin's opined that Plaintiff's performance on the IQ testing with within the impaired range, but that "it is likely that her emotional disruption was affecting her performance on testing today."  AR 563.  Dr. Martin also noted that based on history and the

4

interview, Plaintiff's cognitive functioning was most likely higher than the testing indicated.  Id.

### 2.    Applicable Law

Three types of physicians may offer opinions in Social Security cases: (1) those who directly treated the plaintiff, (2) those who examined but did not treat the plaintiff, and (3) those who did neither.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  A treating physician's opinion is generally entitled to more weight than that of an examining physician, and an examining physician's opinion is generally entitled to more weight than that of a non-examining physician.  Id.  When a treating or examining physician's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons.  See Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008); Lester, 81 F.3d at 830.  When it is contradicted, the ALJ must provide only "specific and legitimate reasons" for discounting it.  Id.

An ALJ need not accept the opinion of any physician, however, if it is brief, conclusory, and inadequately supported by clinical findings.  Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002).  The weight given a physician's opinion, moreover, depends on whether it is consistent with the record and accompanied by adequate explanation, the nature and extent of the treatment relationship, and the doctor's specialty, among other things.  20 C.F.R. § 404.1527(c)(3)-(6).

### 3.    Analysis

The Court finds that the ALJ gave specific and legitimate reasons for discounting the opinions of Drs. Parsa, DiGiaro, and Martin.

The ALJ rejected Dr. Parsa's January 30, 2014 assessment, according it "minimal weight" and "not generally credible" for two reasons: (1) the opinion was not well supported by treating progress notes, and (2) inconsistency with the weight of the medical record. AR 16-17.  The ALJ referenced progress

notes from the Ventura County Behavioral Health Agency indicating that Plaintiff was capable of completing high school, and obtaining and maintaining a job. AR 17 (citing AR 501, 504). Specifically, treating notes from July 2011 stated that Plaintiff "seems to have the intellectual capability for school and with continued treatment and stable housing/environment should most likely be able to complete school and possibly find and maintain employment." AR 504. Additionally, Dr. Parsa's own findings revealed that Plaintiff "[r]esponded well" to treatment and "[h]er symptoms were relatively controlled on medication." AR 589, 594. The ALJ determined that such evidence was inconsistent with Dr. Parsa's conclusion that Plaintiff suffered from a disabling mental impairment, and that she was unable to function outside the home. AR 16; see Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) (finding that ALJ properly rejected treating physician's opinion that was extreme in light of the findings).

Accordingly, the ALJ gave specific, legitimate bases upon which to discount Dr. Parsa's opinion. See Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009); 20 C.F.R. § 404.1527(c)(3), (4) (greater weight given to medical opinions that are well explained, supported by medical evidence, and consistent with the record).

The ALJ also gave specific and legitimate reasons for rejecting Dr. DiGiaro's opinion. An ALJ may give an examining physician's opinion less weight when it is "based primarily on [claimant's] self-report of limitations." Chaudhry v. Astrue, 688 F.3d 661, 671 (9th Cir. 2012). Here, the ALJ found that Dr. DiGiaro's report was based primarily on Plaintiff's subjective complaints including feeling sad, anxious, depressed, and panic attacks. AR 16 (citing AR 309-13). Dr. DiGiaro's report recounted Plaintiff's self-reported daily activities – attending to her personal care unassisted, caring for her children, and attending school 3 hours per day. AR 311. The ALJ also noted

that Dr. DiGiaro's examination occurred only three weeks after Plaintiff had begun mental health treatment.  AR 16.

Similarly, the ALJ rejected Dr. Martin's opinion for being based on Plaintiff's subjective complaints, and also as inconsistent with the record. Here, the ALJ relied primarily on three pieces of evidence: (1) Dr. Martin's conclusion that Plaintiff was disabled was not consistent with other evidence, such as her efforts to obtain a high school diploma, and to live alone with her 22-month-old son and care for his needs; (2) WAIS-IV testing likely under-assessed Plaintiff's cognitive functioning; and (3) Dr. Martin's notes included Plaintiff's complaints that were not mentioned in mental treating source progress notes elsewhere in the record.  AR 16 (citing AR 559-64).

Moreover, the ALJ was entitled to rely on the opinion of the state agency reviewing physician, Dr. A. Garcia, who was an expert in applying the Social Security regulations, over the opinions of Drs. Parsa, DiGiaro, and Martin.  See Thomas, 278 F.3d at 957 ("The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record."); see also Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009) (upholding RFC determination when ALJ relied on state-agency physician's opinion over that of treating physician); 20 C.F.R. § 404.1527(e)(2)(ii) (noting importance of agency physicians' expertise in Social Security rules).

The ALJ accorded Dr. Garcia's report "significant weight" because it was based on medical signs and laboratory findings and was consistent with the record.  AR 16; see Thomas, 278 F.3d at 957.  In his August 30, 2013 opinion, Dr. Garcia reviewed all of Plaintiff's medical evidence and consultative examiner reports, including those by Drs. DiGiaro and Martin. AR 65-72.  Dr. Garcia opined that Plaintiff would be able to sustain attention,

7

persistence, and pace adequately to perform simple tasks for two-hour periods during the course of a normal workday or workweek.  AR 68.  Dr. Garcia also opined that Plaintiff was no more than "moderately limited" in her ability to interact socially in a work-setting, understand and remember detailed instructions, and adapt to changes at work.  AR 68-69.

It is the sole province of the ALJ to resolve conflicts in the medical-opinion evidence.  See Andrews, 53 F.3d 1035, 1041 (9th Cir. 1995); Lingenfelter v. Astrue, 504 F.3d 1028, 1042 (9th Cir. 2007) ("When evaluating the medical opinions of treating and examining physicians, the ALJ has discretion to weigh the value of each of the various reports, to resolve conflicts in the reports, and to determine which reports to credit and which to reject."); Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 603 (9th Cir. 1999) (holding that ALJ was "responsible for resolving conflicts" and "internal inconsistencies" within doctor's reports).  Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld.  See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  Accordingly, remand is not warranted on this issue.

**B.** **The ALJ Properly Considered Whether Plaintiff's Impairment Met or Equaled a Listed Condition.**

Plaintiff contends that the ALJ erred by failing to consider whether her severe impairments of mood disorder, not otherwise specified, and history of polysubstance abuse reported in remission met or equaled Listing 12.05(B). Dkt. 21 at 24.  Plaintiff alleges that her WAIS-IV IQ scores obtained in a May 23, 2013 psychological evaluation support a finding that Plaintiff's combination of impairments is equivalent to Listing 12.05(B). Id. at 24-26.

**1.** **Applicable Law**

At step three of the sequential evaluation process, the ALJ must evaluate the claimant's impairments to see if they meet or medically equal a Listing.

See § 404.1520(d); <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999). Listed impairments are those that are "so severe that they are irrebuttably presumed disabling, without any specific finding as to the claimant's ability to perform his past relevant work or any other jobs." <u>Lester</u>, 81 F.3d at 828.

The claimant has the initial burden of proving that an impairment meets or equals a Listing. <u>See</u> <u>Sullivan v. Zebley</u>, 493 U.S. 521, 530-31 (1990). "To meet a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim." <u>Tackett</u>, 180 F.3d at 1099. "To equal a listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment, or, if a claimant's impairment is not listed, then to the listed impairment 'most like' the claimant's impairment." <u>Id.</u> (quoting 20 C.F.R. § 404.1526). Medical equivalence, moreover, "must be based on medical findings;" "[a] generalized assertion of functional problems is not enough to establish disability at step three." <u>Id.</u> at 1100.

An ALJ "must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment." <u>Lewis v. Apfel</u>, 236 F.3d 503, 512 (9th Cir. 2001). The ALJ need not, however, "state why a claimant failed to satisfy every different section of the listing of impairments." <u>Gonzalez v. Sullivan</u>, 914 F.2d 1197, 1201 (9th Cir. 1990) (finding that ALJ did not err in failing to state what evidence supported conclusion, or discuss why, claimant's impairments did not satisfy Listing). Moreover, the ALJ "is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." <u>Burch</u>, 400 F.3d at 683 (citing <u>Lewis</u>, 236 F.3d at 514).

For some impairments, the evidence must show that the impairment has

9

lasted for a specific time period.  20 C.F.R. §§ 404.1525(c)(4), 416.925(c)(4).  "For all others, the evidence must show that [the] impairment(s) has lasted or can be expected to last for a continuous period of at least 12 months."  Id.  If a claimant's impairment meets or equals a listed impairment, he or she will be found disabled at step three without further inquiry.  20 C.F.R. §§ 404.1520(d), 416.920(d).

An ALJ's decision that a plaintiff did not meet a Listing must be upheld if it was supported by "substantial evidence."  See Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006).  Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997) (internal quotation marks omitted).  When evidence is susceptible to more than one rational interpretation, the Court must uphold the ALJ's conclusion as long as substantial evidence supported it.  Id.

## 2.   Analysis

Listing 12.05, the listing for intellectual disability, is met when the requirements set forth in paragraphs A, B, C, or D are satisfied.  To satisfy paragraph B, a claimant must have "[a] valid verbal, performance, or full scale IQ of 59 or less."  20 C.F.R. Pt. 404, subpt. P, app. 1, § 12.05.  Although Plaintiff contends that she has a listing-level mental impairment, she fails to provide credible evidence to demonstrate that she meets the criteria in paragraph B of Listing 12.05.  See 20 C.F.R., pt. 404, subpt. P, app.1 § 12.05; see also Zebley, 493 U.S. at 530-31 (holding that a plaintiff has the burden of producing evidence that her impairment meets all the criteria).

Paragraph B requires that Plaintiff demonstrate a valid verbal, performance, or full scale IQ score in a specified range.  See 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05.  Plaintiff relies on Dr. Martin's May 23, 2013

10

consultative psychological exam that tested Plaintiff's full-scale IQ at 57.  Dkt. 21 at 24-25 (citing AR 562-63).  However, as the ALJ noted, Dr. Martin's own evaluation cast doubt on the validity of Plaintiff's IQ score.  AR 14; see Maggard v. Apfel, 167 F.3d 376, 380 (7th Cir. 1999) (noting that medical and other evidence in the record can "cast doubt on the validity" of an IQ score). Dr. Martin found that "[b]ased on history and presentation on interview, [Plaintiff's] cognitive functioning is most likely somewhat higher than testing would suggest."  AR 563.  Dr. Martin also concluded that the Plaintiff had a "history of serious emotional disruption" and that it was likely that her "emotional disruption was affecting her performance on testing today."  Id. Without being able to give an accurate determination because of Plaintiff's unreliable scores, Dr. Martin found the performance on the IQ test to be within impaired range of intellectual functioning.  AR 563.  Absent a valid IQ score within the specified range in paragraph B, Plaintiff cannot meet all the required criteria.  See Zebley, 493 U.S. at 530-31.

Moreover, the medical record did not support Plaintiff's contention that her intellectual disability met or equaled Listing 12.05(B).  During a May 27, 2012 consultative psychiatric evaluation, Dr. DiGiaro found that Plaintiff's thought content was "appropriate to the situation" and she was of average intelligence.  AR 311.  And, following a January 30, 2014 examination, Dr. Parsa opined that Plaintiff did not have a low IQ or reduced intellectual functioning.  AR 593.

When considering the record as a whole, it is clear that Plaintiff has not met her burden of showing that she meets or equals each of the required elements of Listing 12.05(B).  See Bowen v. Yuckert, 482 U.S. 137, 145-152 (1987) (placing burden on claimant to produce evidence that his impairment meets a listing); see also Zebley, 493 U.S. at 530 ("An impairment that manifests only some of [the listed] criteria, no matter how severely, does not

11

1    qualify." (footnote and citation omitted)).  The ALJ reviewed all of the

2    medical evidence in detail and correctly found, at step three of the sequential

3    analysis, that Plaintiff has not met her burden of demonstrating that she has an

4    intellectual disability which meets or equals Listing 12.05(B).  Remand

5    therefore is not warranted.

6    **C.**    **The ALJ Properly Evaluated Plaintiff's Mental Impairments.**

7         Plaintiff next contends that the ALJ erred in evaluating her mental

8    impairments by determining that she did not meet the Paragraph B criteria,

9    and therefore improperly assessed Plaintiff's RFC.  Dkt. 21 at 30-34.

10        The Court disagrees.  The ALJ provided an extensive evaluation of the

11   severity of Plaintiff's mental disorders by considering the four broad functional

12   areas, also known as the "Paragraph B" criteria, set out in the disability

13   regulation for evaluating mental disorders and in section 12.00 C of the

14   Listing.  AR 15-16 (citing 20 C.F.R, pt. 404, subpt. P, app. 1).  Paragraph B

15   requires that Plaintiff's symptoms result in at least two of the following:

16   (1) marked restriction of activities of daily living; (2) marked difficulties in

17   maintaining social functioning; (3) marked difficulties in maintaining

18   concentration, persistence, or pace; or (4) repeated episodes of

19   decompensation, each of extended duration.  20 C.F.R, pt. 404, subpt. P, app.

20   1 § 12.04(B).

21        Although Plaintiff argues that the ALJ failed to properly assess the

22   Paragraph B criteria according to the special technique set forth in 20 C.F.R.

23   § 416.920a, the record shows that the ALJ made specific findings in each of the

24   four functional areas.  <u>See</u> AR 17.  The ALJ found that Plaintiff had: (1) no-to-

25   mild restrictions in activities of daily living; (2) mild difficulties in maintaining

26   social functioning; (3) moderate difficulties in maintaining concentration,

27   persistence or pace; and (4) no evidence of episodes of decompensation during

28   the relevant period of alleged disability.  AR 15.

1    Plaintiff's contention that the ALJ's decision was not supported by

2  substantial evidence because the ALJ improperly rejected the opinions of Drs.

3  Parsa, DiGiaro, Martin, and Garcia is without merit.  As discussed above, the

4  ALJ gave specific and legitimate reasons for rejecting the opinions of Drs.

5  Parsa, DiGiaro, and Martin.  As to Dr. Garcia, the ALJ gave the report

6  "substantial weight," except in regard to the Paragraph B finding because "the

7  medical record fail[ed] to support a finding of moderate functional limitation

8  in all areas listed."  AR 16.  The ALJ explicitly noted consideration of

9  Plaintiff's entire medical history and specifically detailed records showing that

10 Plaintiff was capable of attending an independent study program to earn her

11 high school diploma, took care of her baby/young child, lived alone, and had

12 a good response to medication.  AR 16-18; see Reddick v. Chater, 157 F.3d

13 715, 725 (9th Cir. 1998) (ALJ's decision may resolve questions of credibility

14 "by setting out a detailed and thorough summary of the facts and conflicting

15 clinical evidence, stating his interpretation thereof, and making findings.").

16    Because the ALJ found that Plaintiff had no more than moderate

17 limitations in daily activities, social functioning, and maintaining

18 concentration, persistence or pace, and that there was no evidence of episodes

19 of decompensation, she properly found that Plaintiff failed to satisfy the

20 Paragraph B criteria.  AR 15; see 20 C.F.R. § 416.920a(b)(2), (c), (e)(2).

21 Therefore, the ALJ was not required to incorporate Paragraph B into Plaintiff's

22 RFC.  The Court thus finds that the ALJ's determination of Plaintiff's mental

23 impairments was supported by substantial evidence.

24 **D.    The ALJ Gave Clear and Convincing Reasons for Discounting**

25        **Plaintiff's Credibility.**

26    Plaintiff next contends that the ALJ erred in assessing her credibility

27 concerning the limiting effects of her mental impairments.  Dkt. 21 at 36-39.

28 Plaintiff testified that she is "always [] scared" and feels nervous around other

13

people, as if she is "being [] watched[.]"  AR 29.  She never leaves the house alone, always needing somebody to accompany her.  AR 33.  Plaintiff also testified that she feels overwhelmed and "stressed out" three to four days a week, and sends her son to his father's mother's house during those times.  AR 36.

### 1.    Applicable Law

An ALJ's assessment of symptom severity and claimant credibility is entitled to "great weight."  See Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986).  "[T]he ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)."  Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (internal quotation marks omitted).

In evaluating a claimant's subjective symptom testimony, the ALJ engages in a two-step analysis.  See Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009); Lingenfelter, 504 F.3d at 1035-36.  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment [that] could reasonably be expected to produce the pain or other symptoms alleged."  Lingenfelter, 504 F.3d at 1036.  If so, the ALJ may not reject a claimant's testimony "simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged."  Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, if the claimant meets the first test, the ALJ may discredit the claimant's subjective symptom testimony only if he makes specific findings that support the conclusion.  Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010).  Absent a finding or affirmative evidence of malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony.  Lester, 81 F.3d at 834; Ghanim v. Colvin, 763 F.3d 1154, 1163 & n.9 (9th Cir.

14

2014).  The ALJ must consider a claimant's work record, observations of medical providers and third parties with knowledge of claimant's limitations, aggravating factors, functional restrictions caused by symptoms, effects of medication, and the claimant's daily activities.  <u>Smolen</u>, 80 F.3d at 1283-84 & n.8.  "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."  <u>Burch</u>, 400 F.3d at 681.

The ALJ may also use ordinary techniques of credibility evaluation, such as considering the claimant's reputation for lying and inconsistencies in his statements or between his statements and his conduct.  <u>Id</u>. at 1284; <u>Thomas</u>, 278 F.3d at 958-59.

**2.    Analysis**

Following the two-step process outlined above, the ALJ found as follows:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements considering the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.[2]

AR 17.

The ALJ gave four reasons for discounting Plaintiff's credibility: (1) Plaintiff was capable of taking care of daily activities and functioning; (2) made inconsistent statements regarding her use of marijuana; (3) was

---

[2]    The ALJ's "reasons explained in this decision" are at AR 13-18. The Court has not quoted that discussion in full here, but discusses it in relevant part in the Court's analysis, below.

noncompliant with medical advice, and (4) responded to limited and conservative treatment.  AR 17-18.

a.      Plaintiff's daily activities were inconsistent with her claims of disabling symptoms.

The ALJ noted that despite Plaintiff's allegations of being "significantly limited on a mental health basis," the record showed that she (1) attended an independent studies program to obtain her high school diploma; (2) took care of a 22 month old toddler, at least one-half time; and (3) the record reflected that Plaintiff was capable of taking care of daily functioning.  AR 17 (citing AR 543-549).  During a consultative examination on May 27, 2012, Plaintiff admitted to taking care of her personal needs daily, including bathing and dressing herself.  AR 311.  She saw her infant son for four hours a day and helped take care of her daughter.  AR 311.  Plaintiff attended school three hours a day and also attended the New Start for Moms[3] program three days a week.  AR 311.  At the administrative hearing, Plaintiff testified that she took care of her 22-month-old son who lived with her part-time, between 3 and 3.5 days a week.  AR 28, 30.  When asked by the ALJ if she was able to provide a safe environment for her son while in her care, Plaintiff responded, "yes."  AR 30.  Plaintiff also testified that she could provide for all her son's needs, including feeding, diapering, and clothing him.  AR 30-31.

---

[3]      According to the Ventura County Health Care Agency, the New Start For Moms program provides help for women with alcohol and other drug-related problems, especially those who are pregnant or have young children.  See http://vchca.org/behavioral-health/alcohol-and-drug-programs/a-new-start-for-moms.  The program provides many support services including individual and group counseling, parenting education, and vocational services.  Id.

Plaintiff's ability to care for herself and her young children was a clear and convincing reason to discount her credibility, even if her impairments made those activities somewhat more challenging.  See Burch, 400 F.3d at 681 (noting that ALJ may discredit allegations of disability on basis that claimant engages in daily activities involving skills that could be transferred to the workplace); Curry v. Sullivan, 925 F.2d 1127, 1130 (9th Cir. 1990) (as amended) (finding that the claimant's ability to "take care of her personal needs . . . may be seen as inconsistent with the presence of a condition which would preclude all work activity") (citing Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989)); Molina, 674 F.3d at 1113 ("Even where [claimant's] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."); Conley v. Astrue, 471 F. App'x 758, 759 (9th Cir. 2012) (finding that ALJ properly discredited claimant's testimony in part because she took regular care of two toddler children and her own personal needs); Mancillas-Gutierrez v. Astrue, No. 08-1169, 2009 WL 453059, at *5 (C.D. Cal. Feb. 23, 2009) (holding that ALJ reasonably inferred that claimant's ability to care for two-year-old daughter and engage in activities of daily living conflicted with her allegations of disabling symptoms).

> b.   Plaintiff provided inconsistent explanations regarding her use of marijuana.

When asked by the ALJ at the administrative hearing if she was "clean and sober," Plaintiff testified that she had not used marijuana since age 14. AR 29.  However, as the ALJ noted, treatment notes dated October 2011 from the Ventura County Medical Center revealed that Plaintiff was "brought in for smoking marijuana while pregnant."  AR 18 (citing AR 389-90).  The notes also stated that Plaintiff used marijuana two times per week.  Id.  Plaintiff was 18 years old at the time.

17

An ALJ is entitled to rely on ordinary techniques of credibility evaluation, such as considering inconsistencies in a claimant's statements. See Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997) ("[The] ALJ's finding that a claimant generally lacked credibility is a permissible basis to reject excess pain testimony."); see also Fair, 885 F.2d at 603 ("If a claimant … is found to have been less than candid in other aspects of his testimony, that may properly be taken into account in determining whether his claim of disabling pain should be believed.").

Here, the record supports a finding of inconsistency between Plaintiff's testimony denying marijuana use, and the medical records documenting marijuana use.  This inconsistency provides another clear and convincing reason for the ALJ to discount the credibility of Plaintiff's testimony concerning the severity and limiting effects of her symptoms.  See Ancira v. Colvin, No. 14-1913, 2015 WL 7272682, at *3 (C.D. Cal. Nov. 17, 2015) (ALJ's decision to discount credibility of a claimant who testified he was "clean and sober" but whose medical records showed he continued to use marijuana was supported by substantial evidence).

c.    Plaintiff was noncompliant with medical advice.

An ALJ may rely upon a claimant's noncompliance with treatment for an adverse credibility finding.  See Orn v. Astrue, 495 F.3d 625, 638 (9th Cir. 2007).  Here, the ALJ noted that Plaintiff "did not always take psychiatric medication as prescribed, as she allowed herself to run out of medication or did not take it because she was pregnant."  AR 17-18.  Plaintiff argues that she stopped taking medication while pregnant on the advice of her doctor.  Dkt. 21 at 38.  However, Plaintiff fails to explain why she did not take prescribed medications post-pregnancy and why she was noncompliant with non-medication therapy treatment.  For example, Dr. DiGiaro's May 27, 2012 examination notes stated that Plaintiff was not taking medications despite

18

having given birth six week prior.  AR 310.  Dr. DiGiaro also stated that Plaintiff had only returned to mental health treatment three weeks before the consultative exam.  Id.  Further, the ALJ noted Dr. Martin's evaluation from May 23, 2013 where Plaintiff admitted that she had not attended therapy for 2 months, although previously she attended weekly sessions.  AR 14 (citing AR 560).

Accordingly, Plaintiff's failure to comply with medical treatment was another clear and convincing reason for the ALJ to discount her testimony.  See Molina, 674 F.3d at 1112 (an ALJ may consider an "'unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment'" in assessing the claimant's credibility (citing Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008))).

d.     The ALJ's improper characterization of Plaintiff's treatment as conservative was harmless error.

In assessing the claimant's credibility, an ALJ may also consider evidence of conservative treatment in discounting testimony regarding the severity of an impairment.  See Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007).  It is true that "[i]mpairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility" for Social Security benefits.  Warre, 439 F.3d at 1006.  However, courts specifically have recognized that psychotropic medications, like Zoloft and Haldol,[4] indicate mental health treatment which is not "conservative" within

---

[4]     The U.S. National Institute of Health describes Zoloft (Sertraline) as an antidepressant used to treat people with depression, panic, anxiety, or obsessive-compulsive symptoms.  See https://www.nlm.nih.gov/medlineplus /druginfo/meds/a697048.html.  Haldol (Haloperidol) is an anti-psychotic drug used to treat schizophrenia, and to control the tics and vocal utterances of Tourette's Disorder.  See https://www.nlm.nih.gov/medlineplus/druginfo

19

1  the meaning of social security disability.  See, e.g., Dallas v. Colvin, No. 13-
2  2044, 2015 WL 1097309, at *6 (D. Ariz. Mar. 6, 2015) (ALJ improperly
3  discounted testimony in part because claimant sought medical treatment and
4  counseling, and was prescribed strong medications like Zoloft); Carden v.
5  Colvin, No. 13-3856, 2014 WL 839111, at *3 (C.D. Cal. Mar. 4, 2014)
6  (claimant's Zoloft prescription was not "conservative" treatment).  Also,
7  showing some improvement while using the psychotropic drugs does not
8  automatically undermine a plaintiff's credibility.  See Christopherson v.
9  Comm'r Soc. Sec. Admin., 460 F. App'x 631, 633 (9th Cir. 2011)
10  ("[Claimant's] sporadic improvements while on Haldol do not undercut her
11  credibility or the severity of her alleged disability.").
12        Here, the ALJ determined that Plaintiff's treating physicians prescribed
13  Plaintiff limited and conservative treatment, and that "[s]uch treatment is
14  inconsistent with, and would not be expected from treating physicians if they
15  found the level of severity of symptoms as alleged by the claimant."  AR 18.
16  The ALJ referenced Dr. Parsa's January 30, 2014 mental impairment medical
17  source statement, noting that Plaintiff responded well to her treatment of
18  medication and psychotherapy.  AR 589.  In the same statement, Dr. Parsa
19  also noted that he made adjustments to Plaintiff's psychiatric medication –
20  Zoloft and Haldor – due to her pregnancy.  AR 589.
21        That the ALJ discounted Plaintiff's credibility because she responded to
22  "conservative" treatment of psychotropic medications was improper, because
23  Plaintiff's treatment was not conservative.  See Christopherson, 460 F. App'x
24  at 633; Carden, No. 13-3856, 2014 WL 839111, at *3.  However, any error was
25  harmless because the ALJ provided three other valid reasons for discounting
26  
27  /meds/a682180.html.
28

20

1  Plaintiff's credibility that were each supported by substantial evidence, and
2  were sufficiently clear and convincing.  See Burch, 400 F.3d at 681.

3      On appellate review, this Court is limited to determining whether the
4  ALJ properly identified reasons for discrediting Plaintiff's credibility.  Smolen,
5  80 F.3d at 1284.  Plaintiff's daily activities, inconsistent statements, and
6  noncompliance with medical advice were proper and sufficiently specific bases
7  for discounting her claims of disabling symptoms, and the ALJ's reasoning
8  was clear and convincing.  See Tommasetti, 533 F.3d at 1039-40; Houghton v.
9  Comm'r Soc. Sec. Admin., 493 F. App'x 843, 845 (9th Cir. 2012).  Because the
10  ALJ's findings were supported by substantial evidence, this Court may not
11  engage in second-guessing. See Thomas, 278 F.3d at 959; Fair, 885 F.2d at
12  604.  Remand is therefore not warranted on this issue.

13  **E.    The ALJ Properly Accounted for Plaintiff's Mental Impairments in**
14  **Formulating Her RFC, Allowing Reliance on the Grids.**

15      Plaintiff next contends that the ALJ erred at step five by relying on the
16  Medical-Vocational Guidelines ("the Grids") instead of testimony from a VE.
17  Dkt. 21 at 3; see 20 C.F.R. pt. 404, subpt. P, app. 2.  Plaintiff argues that the
18  ALJ's reliance on the Grids was improper where, as here, non-exertional
19  limitations were present.  Dkt. 21 at 3-7, 9.

20      **1.    Applicable Law**

21      The Grids are used to determine whether substantial gainful work exists
22  for a claimant with respect to substantially uniform levels of impairment.
23  Thomas, 278 F.3d at 960; see also Moore v. Apfel, 216 F.3d 864, 869 (9th Cir.
24  2000).  The Grids may be used only where they "completely and accurately
25  represent a claimant's limitations."  Tackett, 180 F.3d at 1101.

26      If the claimant's limitations are only non-exertional, "the grids are
27  inappropriate and the ALJ must rely on other evidence."  Lounsbury v.
28  Barnhart, 468 F.3d 1111, 1115 (9th Cir. 2006).  However, if an ALJ finds a

claimant's "nonexertional limitations do not significantly affect his exertional capabilities," the ALJ may use the Grids in lieu of calling a VE.  See Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990) (overruled on other grounds by Bunnell v. Sullivan, 947 F.2d 341 (9th Cir. 1991) (en banc).  In fact, testimony from a VE is required only if a claimant's non-exertional impairments are sufficiently severe so as to "significantly limit the range of work permitted by the claimant's exertional limitations."  Hoopai v. Astrue, 499 F.3d 1071, 1076 (9th Cir. 2007) (citing Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988) (emphasis added).  Thus, "an ALJ is required to seek the assistance of a [VE] when the non-exertional limitations are at a sufficient level of severity such as to make the grids inapplicable to the particular case."  Id.; see also Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 577 (9th Cir. 1988) ("[T]he fact that a non-exertional limitation is alleged does not automatically preclude application of the grids;" "ALJ should first determine if a claimant's non-exertional limitations significantly limit the range of work permitted by his exertional limitations.").

       2.   **Analysis**

       Here, as discussed above, the Court has already found that the ALJ did not err in weighing conflicting evidence and determining that Plaintiff's only workplace limitation was that she be restricted to "no greater than simple repetitive tasks."  AR 16.  Having properly made that determination, the Court finds that the ALJ properly relied on the Grids, because Plaintiff's non-exertional limitation did not restrict the full range of unskilled work so significantly that VE testimony was required.  See Hoopai, 499 F.3d at 1076.

       Under Social Security Ruling 85-15, the basic mental demands of competitive, remunerative, unskilled work include the abilities on a sustained basis to understand, carry out, and remember simple instructions; and to respond appropriately to supervision, coworkers, and usual work situations.

Soc. Sec. Ruling 85–15 p. 4.  The ALJ found that Plaintiff's ability to perform work at all exertional levels was compromised by the non-exertional limitations of "no greater than simple repetitive tasks."  AR 16.  The ALJ further stated that "these limitations have little or no effect on the occupational base of unskilled work at all exertional levels" and determined that Plaintiff was not disabled under § 204.00 of the Grids.[5]  AR 18; see Morning v. Astrue, No. 12-0538, 2013 WL 257412, at *11-12 (C.D. Cal. Jan. 23, 2013) (finding ALJ's reliance on the Grids appropriate where claimant's limitations had little to no effect on the occupational base of unskilled work).

The Ninth Circuit has held that mild or moderate mental limitations are not sufficiently severe non-exertional limitations, and an ALJ may rely on the Grids without the assistance of a VE.  See Hoopai, 499 F.3d at 1077 (discussing mild to moderate symptoms of depression).  Here, the ALJ reviewed the record and specifically determined that Plaintiff's mental limitations were no more than moderately limiting, and that Plaintiff's capacity for a full-range of work was not significantly diminished by her non-exertional limitations to simple repetitive tasks.  AR 13-18; see Angulo v. Colvin, 577 F. App'x 686, 687 (9th Cir. 2014) (unpublished) (ALJ's use of grids instead of VE testimony was appropriate in part because claimant's restriction to simple, repetitive work did not "significantly limit his ability to do unskilled [work]"); Garcia v. Comm'r of Soc. Sec., 587 Fed. App'x 367, 370 (9th Cir. 2014) (unpublished) (ALJ's use of grids instead of VE testimony was appropriate because claimant's "limited capacity to work with others and

---

[5]     According to 20 C.F.R. pt. 404, subpt. P, app. 2, § 204.00, "an impairment which does not preclude heavy work (or very heavy work) would not ordinarily be the primary reason for unemployment, and generally is sufficient for a finding of not disabled[.]"

to work amid fumes and dust, did not significantly erode the base of unskilled light work with limited or no public contact for which [claimant] was otherwise qualified.").

Plaintiff has not, and cannot, prove that the limitation to simple, repetitive work so significantly erodes the occupational base at all exertional levels as to render the Grids inapplicable. Accordingly, the ALJ's step-five determination did not improperly rely on the Grids and is supported by substantial evidence. Remand is therefore not warranted on this basis.

## IV.

## CONCLUSION

For the reasons stated above, the decision of the Social Security Commissioner is AFFIRMED and the action is DISMISSED with prejudice.

Dated:  <u>March 21, 2016</u>

KAREN E. SCOTT
United States Magistrate Judge

24